UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

CLONUS ASSOCIATES,

                Plaintiff,

- against --

DREAMWORKS, LLC and WARNER
BROTHERS ENTERTAINMENT, INC.,

                Defendants.

------------------------------------------------------------X

OPINION AND ORDER

05 Civ. 7043 (SAS)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/27/05

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

Clonus Associates seeks a preliminary injunction against defendants DreamWorks, LLC and Warner Brothers Entertainment, Inc. Plaintiff alleges that defendants infringed the copyright of its 1979 movie, *Parts: The Clonus Horror* ("*Clonus*") through production and distribution of *The Island*, a movie released by defendants in July 2005.

## I. BACKGROUND

On July 6, 2005, plaintiff sent a letter to defendants to "formally place Defendants on notice that any release of *The Island* constituted copyright

1

infringement."[1] DreamWorks responded by denying any wrongdoing, and Warner Brothers did not respond.[2] On August 8, 2005, plaintiff filed a complaint alleging copyright infringement under the Copyright Act of 1976,[3] followed by a motion for preliminary injunction on August 19.[4]

## II. LEGAL STANDARD

A preliminary injunction is an extraordinary measure that should not be routinely granted.[5] This drastic remedy is available only when a party can demonstrate: (1) probability of irreparable harm in the absence of injunctive relief and (2) either a likelihood of success on the merits of the claim, or a serious question going to the merits and a balance of hardships tipping decidedly in plaintiff's favor.[6]

---

[1] Memorandum of Law in Support of Plaintiff's Motion for a Preliminary Injunction ("Pl. Mem.") at 7.

[2] See id.; 8/19/05 Declaration of William C. Wright, Plaintiff's Counsel ("Wright Decl.") ¶ 6.

[3] See 17 U.S.C. § 101 et seq.

[4] See 8/19/05 Order to Show Cause Why a Preliminary Injunction Should Not Issue.

[5] See Mazurek v. Armstrong, 520 U.S. 968, 972 (1997).

[6] See Virgin Enters. v. Nawab, 335 F.3d 141, 145 (2d Cir. 2003) (citing Bristol-Myers Squibb Co. v. McNeil-PPC, 973 F.2d 1033, 1038 (2d Cir. 1992); Jackson Dairy, Inc. v. H.P. Hood & Sons, 596 F.2d 70, 72 (2d Cir. 1979) (per curiam)).

## A. Irreparable Harm

The party requesting a preliminary injunction "must show not only that irreparable injury is possible, but that it is likely."[7] Irreparable harm is defined as "an injury that is not remote or speculative but actual and imminent, and 'for which a monetary award cannot be adequate compensation.'"[8] In the Second Circuit, a prima facie case of copyright infringement generally gives rise to a presumption of irreparable harm.[9] Thus, "the requirement of proof of irreparable harm can in such a case effectively be met by proof of a likelihood of success on the merits."[10] This presumption exists because where illegal copying has occurred, the confusion created in the marketplace will often damage the copyright holder in incalculable and incurable ways.[11]

The presumption of irreparable harm that arises with a prima facie

---

[7] *Jackson Dairy*, 596 F.2d at 72.

[8] *Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27, 37 (2d Cir. 1995) (quoting *Jackson Dairy*, 596 F.2d at 72).

[9] *See Random House, Inc. v. Rosetta Books LLC*, 283 F.3d 490, 491 (2d Cir. 2002).

[10] *Id.*

[11] *See Bourne Co. v. Tower Records*, 976 F.2d 99, 101 (2d Cir. 1992).

3

case of copyright infringement "falls when opposing evidence is offered."[12] For example, the presumption "vanishes if the copyright holder unreasonably delays prosecuting his infringement claim."[13] The presumption of irreparable harm may also be rebutted if "'the plaintiff's damages appear to be trivial.'"[14] If a defendant successfully rebuts the presumption, the burden of proof reverts to plaintiff to prove irreparable harm.[15]

B.  **The Merits**

To prevail on a claim of copyright infringement, a plaintiff must establish "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."[16] A certificate of registration made before or within five years of publication of a work is prima facie evidence of the first element.[17] Because direct evidence is seldom available to prove the second

---

[12] *Marisa Christina, Inc. v. Bernard Chaus, Inc.*, 808 F. Supp. 356, 359 (S.D.N.Y. 1992) (citing 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright ("Nimmer") § 32 (1992)). *Accord Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 25 F.3d 119, 124 (2d Cir. 1994).

[13] *Fisher-Price*, 25 F.3d at 124 (citing *Bourne Co.*, 976 F.2d at 101).

[14] *Blazon, Inc. v. DeLuxe Game Corp.*, 268 F. Supp. 416, 420 (S.D.N.Y. 1965) (quoting Nimmer § 157.2 (1963)). *Accord* Nimmer § 14.06[A] (2005).

[15] *See Marisa Christina*, 808 F. Supp. at 359.

[16] *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

[17] *See* 17 U.S.C. § 410(c).

element, a plaintiff may establish copying with indirect evidence.[18] To support an inference that copying took place, the indirect evidence must demonstrate both that the person who composed the defendant's work had access to the copyrighted material, and that there is substantial similarity between the two works.[19]

### 1. Access

Access to a copyrighted work may be inferred from the fact that a work was widely disseminated at the time of copying.[20] If the infringed work has not been widely disseminated, a plaintiff can prove access by showing "a particular chain of events or link by which the alleged infringer might have gained access to the work."[21] Finally, there are certain limited situations in which a plaintiff need not prove access at all, because the similarities between the two works are so "striking" that they alone serve "both to justify an inference of copying and to prove improper appropriation."[22]

---

[18] *See Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003).

[19] *See Boisson v. Banian, Ltd.*, 273 F.3d 262, 269 (2d Cir. 2001); *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 747 (2d Cir. 1998).

[20] *See Boisson*, 273 F.3d at 270 (citing Nimmer § 13.02[A] (2001)).

[21] *Mowry v. Viacon Intern., Inc.*, No. 03 Civ. 3090, 2005 WL 1793773, at *4 (S.D.N.Y. July 29, 2005).

[22] *Arnstein v. Porter*, 154 F.2d 464, 468-69 (2d Cir. 1946). *Accord Jorgensen*, 351 F.3d at 56; *Repp v. Webber*, 132 F.3d 882, 889 (2d Cir. 1997).

"Access means that an alleged infringer had a 'reasonable possibility' – not simply a 'bare possibility' – of hearing [or seeing] the prior work; access cannot be based on mere 'speculation or conjecture.'"[23] In the Second Circuit, a plaintiff must generally prove that the creators themselves, and not only an affiliated corporation, had access to the work that was allegedly copied.[24]

2. **Substantial Similarity**

In determining whether two works are similar enough to prove copying, courts in the Second Circuit have applied an ordinary observer test.[25] Courts must ask "whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work."[26] The Second Circuit has noted that this is "a task generally performed after detailed examination of the works themselves."[27] A court must examine the alleged

---

[23] *Jorgensen*, 351 F.3d at 51 (quoting *Gaste v. Kaiserman*, 863 F.2d 1061, 1066 (2d Cir. 1988)).

[24] *See id.* at 59 ("Bare corporate receipt of . . . [plaintiff's] work, without any allegation of a nexus between the recipients and the alleged infringers, is insufficient to raise a triable issue of access.").

[25] *See Warner Bros. v. American Broad. Cos.*, 654 F.2d 204, 208 (2d Cir. 1981).

[26] *Id.* (citing *Ideal Toy Corp. v. Fab-Lu Ltd.*, 360 F.2d 1021, 1022 (2d Cir. 1966)).

[27] *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 48-49 (2d Cir. 1986) (citing *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49 (2d Cir. 1936)).

similarities "in such aspects as the total concept and feel, theme, characters, plot sequence, pace and setting."[28]

It is beyond dispute that copyright protection extends only to the expression of ideas, and not to the ideas themselves.[29] In addition, "scenes a faire," which have been described as "thematic concepts . . . which necessarily must follow from certain plot situations," are not entitled to copyright protection.[30] In determining whether the similarities between two works constitute "more than mere generalized ideas or themes,"[31] courts should be aware that

> dissimilarity between some aspects of the works will not automatically relieve the infringer of liability, for "no copier may defend the act of plagiarism by pointing out how much of the copy he has not pirated." It is only when the similarities between the protected elements of plaintiff's work and the allegedly infringing work are of "small import quantitatively or qualitatively" that the defendant will be found innocent of

---

[28] *Williams v. Crichton*, 84 F.3d 581, 588 (2d Cir. 1996).

[29] *See id.* at 587.

[30] *Reyher v. Children's Television Workshop*, 533 F.2d 87, 91 (2d Cir. 1976). *See generally Hogan v. DC Comics*, 48 F. Supp. 2d 298, 309 (S.D.N.Y. 1999) (citing Nimmer § 13.03[B][4] (1998)). *See also Walker*, 784 F.2d at 50 (in a depiction of policemen in the South Bronx, "drunks, prostitutes, vermin and derelict cars" are scenes a faire); *Williams*, 84 F.3d at 589 (in a story about a dinosaur zoo, "electrified fences, automated tours, dinosaur nurseries, and uniformed workers" are scenes a faire).

[31] *Warner Bros.*, 654 F.2d at 208.

infringement.[32]

Yet, a plaintiff must establish that the similarities between the two works amount to more than "random similarities" that "are of little importance in the works."[33] Substantial similarity will be found if "'the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the works'] aesthetic appeal as the same.'"[34]

### 3. Independent Creation

Once a plaintiff establishes a prima facie case of copyright infringement using either direct or indirect evidence, a defendant may rebut the finding by proving independent creation of the alleged copy.[35] "In analyzing this affirmative defense, the fact-finder must be mindful that 'subconscious' or 'innocent' copying is still copying."[36]

## III. DISCUSSION

In evaluating whether plaintiff will likely suffer irreparable harm, the

---

[32] *Williams,* 84 F.3d at 588 (quoting *Rogers v. Koons,* 960 F.2d 301, 308 (2d Cir. 1992)).

[33] *Hogan,* 48 F. Supp. 2d at 313 (citing *Williams,* 84 F.3d at 590).

[34] *Boisson,* 273 F.3d at 272 (quoting *Folio Impressions, Inc. v. Byer Cal.,* 937 F.2d 759, 765 (2d Cir. 1991)).

[35] *See Repp,* 132 F.3d at 889.

[36] *Id.*

initial inquiry is whether plaintiff has made a prima facie showing of copyright infringement. Clonus Associates claims that the evidence it has proffered supports such a finding, creating a presumption of irreparable harm.[37] Defendants contest every pertinent factual claim, arguing that plaintiff has failed to establish copying, access, or probative similarity, and asserting that defendants can prove independent creation of *The Island*.[38] I have considered all of these issues, and I am left with significant concerns that the similarities between the two movies indicate copying. But it is unnecessary to engage in a full analysis of the merits of plaintiff's copyright claim at this stage in the litigation.[39] Even if plaintiff can demonstrate a likelihood of success on the merits, the motion for preliminary

---

[37] *See* Pl. Mem. at 8.

[38] *See* Defendants' Memorandum of Law in Opposition to Motion for Preliminary Injunction ("Def. Mem.") at 4-8.

[39] *Cf. Bell & Howell: Mamiya Co. v. Masel Supply Co.*, 719 F.2d 42, 46 (2d Cir. 1983) ("The failure of the district court to discuss, and of [plaintiff] to prove, the irreparable injury prong of the preliminary injunction test obviates the need to determine whether a substantial likelihood of trademark infringement . . . has been shown. We believe that these questions are directed at the ultimate merits of the controversy. The Supreme Court has warned, '[I]t is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits.'") (quoting *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)). Although *Masel Supply* dealt with an allegation of trademark infringement under the Lanham Act instead of copyright infringement under the Copyright Act, the Second Circuit has acknowledged that the two contexts are "analogous." *Fisher-Price*, 25 F.3d at 124.

injunction will fail because at this stage it has only shown minimal harm.[40] Any presumption of irreparable harm is thus rebutted, and plaintiff has failed to meet the burden of affirmatively proving that Clonus Associates will suffer irreparable harm in the absence of preliminary injunctive relief.

Plaintiff's arguments about irreparable harm are limited to conclusory assertions that: (1) the value of the *Clonus* copyright is destroyed because there is typically only one opportunity to profit from a remake of a movie; (2) *Clonus* creators are suffering damage to their careers and reputations; and (3) defendants' actions are creating marketplace confusion.[41] While each of these arguments

---

[40] *See, e.g., Marisa Christina*, 808 F. Supp. at 359 ("We hold that the fact that plaintiff's products are no longer on the market, coupled with the implicit concession of plaintiff's counsel that the assertedly infringed sweaters do not represent a current economic asset of the plaintiff, constitutes a rebuttal of the presumption of irreparable harm."); *Belushi v. Woodward*, 598 F. Supp. 36, 37 (D.D.C. 1984) ("The Court [wa]s not persuaded . . . by plaintiff's presentation that her injury [wa]s irreparable" where one photograph in the defendant's book infringed the plaintiff's copyright.); *Consumers Union of U.S., Inc. v. Hobart Mfg.*, 189 F. Supp. 275, 279 (S.D.N.Y. 1960) ("The harm possible to plaintiff by circulation of defendants' Sales Bulletins among distributors and dealers is so trivial that, even if it involved a technical violation of copyright, it would not warrant a preliminary injunction."). *Cf. A & M Records, Inc. v. Napster, Inc.*, 114 F. Supp. 2d 896, 925 (N.D. Cal. 2000) ("The court rejects defendant's contention that it has rebutted this presumption by demonstrating that any harm is de minimis" because of survey evidence on the record tending to prove the harmful results of infringement as well as proof that plaintiff's investments and business plans were threatened.).

[41] *See* Pl. Mem. at 8-9.

might be persuasive in a different context, they do not establish more than minimal harm here due to the peculiar nature of this dispute evaluated on the basis of the current record.

### A. Value of the Copyright

Plaintiff's first claim is that "the entire value" of its copyright is being destroyed because in Hollywood, there is generally only one opportunity for a successful remake.[42] Plaintiff states that "at one time" a studio considered turning *Clonus* into a TV series, and claims that a movie generally preempts a television series on a similar concept.[43] Defendants contend that this claim about the entertainment industry is factually untrue.[44] But more importantly, plaintiff's claim is unsupported by concrete evidence. Courts in this Circuit have frequently rejected such speculative arguments in deciding whether to issue a preliminary injunction.[45]

---

[42] *Id.* at 8.

[43] *Id.*

[44] *See* Def. Mem. at 32 n.17.

[45] *See, e.g., Marcy Playground, Inc. v. Capitol Records, Inc.*, 6 F. Supp. 2d 277, 282 (S.D.N.Y. 1998) ("The only evidence [of irreparable harm is] the conclusory and unsubstantiated assertions of irreparable injury by Kotler and White, the persuasiveness of which is significantly undercut by their relative inexperience in the music business and their manifest self interest. . . . The most that can be said is that they have advanced a speculative theory."); *Marisa*

11

Nor has plaintiff provided any theory as to how a preliminary injunction would remedy the alleged diminution in the value of its copyright. Whatever harm the distribution of *The Island* might cause to the value of the *Clonus* copyright "has already occurred in virtually all material respects," because *The Island* has been on the market since July 22.[46] Plaintiff was not able to explain how a preliminary injunction would prevent or correct any devaluation of its copyright, and focused instead on the desire to prevent defendants from profiting unfairly.[47]

---

*Christina*, 808 F. Supp. at 359 ("Plaintiff's chief argument seems to be that a customer who bought one of the plaintiff's sweaters from last year may see one of defendant's substantially similar copies selling at half price and feel that they were ripped off by the plaintiff. The plaintiff has presented no evidence in the record to support what is a [wholly] speculative claim of injury. Plaintiff's theory of irreparable harm standing on its own is too hypothetical to form the basis for a preliminary injunction.") (citation omitted); *Burroughs v. Metro-Goldwyn Mayer, Inc.*, 491 F. Supp. 1320 (S.D.N.Y. 1980) (noting that in spite of plaintiff's speculative claims, "it is far from clear that the proposed Warner Tarzan movie will fall through if Warner does not have exclusive film rights. That decision still remains to be made.") (footnote omitted).

[46] *Marcy Playground*, 6 F. Supp. 2d at 282 (concluding that "a preliminary injunction here would be very much like locking the barn door after the horse is gone."). The release of *The Island* to home video has not yet occurred. However, I explain below that even if there is marketplace confusion between the two DVDs, it cannot be presumed to harm *Clonus*, and they have offered no evidence that it will. *See infra*, Part III.C.

[47] *See* Pl. Mem. at 8-9; 10/18/05 Transcript of Oral Argument on Plaintiff's Motion for a Preliminary Injunction ("Tr.") at 6:4-7:5.

12

### B. Damage to Careers and Reputations

Plaintiff's second argument is that *Clonus* creators are suffering damage to their careers and reputations by not receiving credit for what was allegedly copied.[48] It is fair to presume that an artist whose work has been copied will usually suffer incalculable harm if she does not receive credit for her creation. But under New York law, a partnership such as Clonus Associates cannot claim the damages of its individual members.[49]

Even if the Court could rely on this argument, at this stage it would only support a finding of minimal harm. Plaintiff does not provide any evidence about how the alleged reputational harm is occurring. I assume the creators of *Clonus* believe that if they were given credit in *The Island*, its marketing and distribution would have improved their reputations among film producers and others in the movie industry.[50] The problem is that the bulk of such harm has

---

[48] *See* Pl. Mem. at 8-9.

[49] *See M.I.F. Secs. Co. v. R.C. Stamm & Co.*, 463 N.Y.S.2d 771, 775 (1st Dep't 1983) ("The law . . . does not allow such facile interchange of identities. The jural rights of a partnership, as an entity, are separate and distinct from those of its partners and employees, as individuals.").

[50] This may be a generous assumption, given *Clonus* director Robert Fiveson's public joke about whether he would like to receive acknowledgment in connection with *The Island*: "Isn't that a little like asking someone if they want their name put on the Hindenburg?" Mark Rahner, *Cloning scuffle between*

already occurred. *The Island* has been playing in theaters for several months. Only the release to home video, pay-per-view and pay cable is yet to occur.[51]

Those in the film industry who control the "future employment opportunities" that *Clonus* creators are allegedly "losing out on" are not waiting to see *The Island* until it is released on DVD.[52] Thus, even if Clonus Associates was able to raise the claims of its individual members, any harm to the careers and reputations of *Clonus* creators would not increase between now and a decision of this matter on the merits.[53]

### C. Marketplace Confusion

Plaintiff has demonstrated that various observers publicly questioned

---

*"Island," "Clonus,"* The Seattle Times, August 15, 2005 ("8/15/05 Seattle Times Article"), Ex. B to 9/29/05 Declaration of Steven Bertram, Chief Financial Officer of DreamWorks, LLC, in Support of Defendants' Opposition to Motion for Preliminary Injunction ("Bertram Decl.") at 3.

[51] *See* Tr. at 7:12-7:14.

[52] Pl. Mem. at 8.

[53] *Cf. Marcy Playground,* 6 F. Supp. 2d at 282 ("While the Court assumes that those in the music business who might consider dealing with Kotler or White as record producers would consider their prior production experience as relevant, the question whether their names are listed on the reissued recordings as the result of an interlocutory court order pending the resolution of a dispute as to whether they in fact performed those functions seems of little consequence. The important facts are that Kotler and White claim to have performed those functions, Wozniak denies it, and the matter is in litigation. Those facts would not be altered by a preliminary injunction.").

14

whether *The Island* was a remake of *Clonus*.[54] In most copyright cases, such "marketplace confusion" is presumed to create harm for a copyright holder. Judge Henry Friendly outlined the reasons for this inference in a case about the copying of an expensive camera.[55] Marketplace confusion between two cameras, he explained, can erode the plaintiff's profit whenever customers purchase the copy instead of the original, and these damages can be difficult to quantify after the fact.[56] Confusion between products can also "cause purchasers to refrain from buying either product and to turn to those of other competitors. . . . Furthermore, if an infringer's product is of poor quality . . . a more lasting but not readily measurable injury may be inflicted on the plaintiff's reputation in the market."[57]

Marketplace confusion between two movies, by contrast, does not lead inexorably to a finding of irreparable harm. In contrast to the purchase of an expensive camera, the purchase of one DVD is not likely to preclude the purchase of another. And unlike confusion between two cameras, marketplace confusion about the alleged connection between these movies is not as likely to affect

---

[54] *See* Pl. Mem. at 5; Collection of Articles, Ex. 2 to Complaint.

[55] *See Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190, 1195 (2d Cir. 1971).

[56] *See id.*

[57] *Id.* (citations omitted).

consumer judgments about the quality of either. Finally, there is evidence here that any confusion has actually benefitted *Clonus* by bringing it increased publicity. Although it was produced in 1979, a DVD of *Clonus* was first released in March, 2005.[58] The publicity and sales of this DVD appear to have been enhanced as a result of marketplace confusion:

> "Sales have definitely picked up," reports Pete Tombs of Mondo Macabro, distributor of the DVD. He says people who'd experienced the flick years earlier – or saw it lampooned on "Mystery Science Theater 3000" – are getting their memories jogged by the "Island" buzz, and that the company's getting plenty of e-mails. "Many of them along the lines of, 'I always knew it was a great idea. Now we see Hollywood had finally realized this, too!" Tombs says this kind of publicity is very unusual for his small, niche company . . . [s]o it plans to reissue "Clonus" with a new cover that includes some of the recent press remarks.[59]

Indeed, plaintiff was unable to provide an explanation as to why the alleged marketplace confusion would create any harm to Clonus Associates, much less the required likelihood of irreparable harm.[60]

---

[58] *See* 8/10/05 Declaration of Robert S. Fiveson, Managing Partner of Clonus Associates ¶ 24.

[59] 8/15/05 Seattle Times Article, Ex. B to Bertram Decl. at 2.

[60] When asked whether there was any proof that marketplace confusion caused harm to *Clonus*, plaintiff's attorney answered "No, because how, I can't get in the mind of the person that's either not buying that in the video store or buying it in the video store. I don't know what their motives are so frankly, your Honor, I

16

I recognize the importance of the general presumption that copyright infringement creates irreparable harm. When a copyright is violated, there will usually be damages that are incalculable and incurable, and courts must be guided by the notion that "[t]he Copyright Law does not condone a practice of 'infringe now, pay later.'"[61] Nonetheless, under the peculiar circumstances presented here, plaintiff has failed to prove that it is entitled to a preliminary injunction, which is "one of the most drastic tools in the arsenal of judicial remedies."[62] Regardless of the eventual resolution of the copyright dispute, I cannot find that Clonus Associates will likely suffer irreparable harm prior to that resolution.[63]

## IV. CONCLUSION

For the reasons set forth above, plaintiff's motion for preliminary injunction is denied, and the Clerk of the Court is directed to close the motion. The parties shall immediately commence expedited discovery, to conclude within sixty days of this Order. A conference is scheduled for January 4 at 4:30 to schedule a trial or a fully dispositive motion. Any discovery disputes that cannot

---

can't." Tr. at 74:25-75:3.

[61] *Woods v. Universal Studios, Inc.*, 920 F. Supp. 62, 65 (S.D.N.Y. 1996).

[62] *Hanson Trust PLC v. SCM Corp.*, 774 F.2d 47, 60 (2d Cir. 1985).

[63] *See Fisher-Price*, 25 F.3d at 122.

be resolved by the parties should be raised immediately with this Court. The case is referred to Magistrate Judge Henry B. Pitman solely to conduct settlement negotiations.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
October 27, 2005

## - Appearances -

**For Plaintiff:**

Robert L. Epstein, Esq.
Jason M. Drangel, Esq.
William C. Wright, Esq.
Epstein Drangel Bazerman & James, LLP
60 East 42nd Street, Suite 820
New York, NY 10165
(212) 292-5390

*Of counsel*
Laurence Singer, Esq.
1717 K Street, Suite 600
Washington, DC 20036
(646) 327-8772

**For Defendants:**

Stephen Huff, Esq.
Tom J. Ferber, Esq.
William Charron, Esq.
Colleen E. Parker, Esq.
Pryor Cashman Sherman & Flynn, LLP
410 Park Avenue
New York, NY 10022
(212) 421-4100

Louis P. Petrich, Esq.
Vincent Cox, Esq.
Leopold, Petrich & Smith
2049 Century Park East, Suite 3110
Los Angeles, CA 90067
(310) 277-3333