Marc Toberoff (MT 4862)
LAW OFFICES OF MARC TOBEROFF, PLC
Attorneys for Plaintiffs
1999 Avenue of the Stars, Suite 1540
Los Angeles, CA 90067
Tel: 310-246-3333

Laurence Singer (*pro hac vice*)
1717 K Street, Suite 600
Washington, DC 20036
Tel. (646) 327-8772

Attorneys for Plaintiffs Clonus Associates and
Robert Fiveson d.b.a. Fiveson Productions

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

CLONUS ASSOCIATES and ROBERT S.
FIVESON d.b.a. FIVESON PRODUCTIONS

     Plaintiffs

     v.

DREAMWORKS, LLC and
WARNER BROS. ENTERTAINMENT, INC.

     Defendants

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Case No. 05 CV 7043 (SAS)

[Hon. Shira A. Scheindlin]

[Electronically filed]

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

INTRODUCTION..................................................................................................1

STATEMENT OF FACTS....................................................................................2

    I.     Plaintiff's Film: "CLONUS".......................................................2

    II.    Defendants' Film: "THE ISLAND".........................................3

ARGUMENT.........................................................................................................4

    I.     Legal Standard..............................................................................4

        A.    Summary Judgment.........................................................4

    II.    THE ISLAND Infringes CLONUS' Copyright As A Matter Of Law..............5

        A.    Plaintiffs Own a Valid Copyright In CLONUS............................6

        B.    Defendants Unlawfully Copied CLONUS....................................6

            1.    Defendants Had Access To CLONUS As A Matter Of Law..................................6

            2.    THE ISLAND Is Strikingly Similar To CLONUS.................9.

            3.    Under The "Ordinary Observer" Test, Defendants' Unlawfully Appropriated CLONUS...............................10

                a.    Plot.............................................................15

                b.    Characters..................................................16

                c.    Total Concept and Feel..............................19

                d.    Settings.....................................................21

                e.    Themes......................................................22

        C.    Defendants' Rationalizations Are Unpersuasive............................24

CONCLUSION....................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**<u>FEDERAL CASES</u>**                                                                    **<u>PAGE</u>**

*Act Young Imports, Inc. v. B&E Sales Company, Inc.,*
    673 F. Supp. 672 (S.D.N.Y. 1987)………………………………………………...5

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)…………………………….......................…………………4-5

*Arica Inst. v. Palmer,*
    970 F.2d 1067 (2d Cir. 1992)…………………………………………….......9-11

*Arden v. Columbia Pictures Industries, Inc.,*
    908 F.Supp. 1248 (S.D.N.Y. 1995)…………………………………….....…15

*Arnstein v. Porter,*
    154 F.2d 464 (2d Cir. 1946)……………………………………………….5-6

*Bevan v. Columbia Broadcasting System, Inc.,*
    329 F. Supp. 601 (S.D.N.Y. 1971)………………………………………..7

*Blazon, Inc. v. Deluxe Game Corp.,*
    268 F. Supp. 416 (S.D.N.Y. 1965)………………………………………..7

*Boisson v. Banian, Ltd.,*
    273 F.3d, 262 (2d Cir. 2001)……………………………………7, 10-11, 24-25

*Castle Rock Entertainment, Inc. v. Carol Pub. Group, Inc.,*
    150 F.3d 132 (2d Cir. 1998)………………………………………………5, 9

*CBS Broadcasting Inc. et al. v. ABC, Inc., et* al,
    2003 U.S. Dist. LEXIS 20258 (S.D.N.Y. 2003)………………………………..7, 9

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)…………………………………………………4-5

*Consarc Corp. v. Marine Midland Bank, N.A.,*
    996 F.2d 568 (2d Cir. 1993)……………………………………………4

*D'Amico v. City of New York,*
    132 F.3d 145 (2d Cir. 1998)……………………………………………4

*Design Options v. Bellepointe, Inc.,*
    940 F. Supp. 86 (S.D.N.Y. 1996)………………………………………5

*Eckes v. Card Prices Update,*
    36 F.2d 859 (2d Cir. 1984)…………………………………………………………...10

*Feist Publications v. Rural Tel. Service Co.*,
    499 U.S. 340 (1991)……………………………………………………5, 10, 19, 24-25

*Ferguson v. National Broadcasting Co.,*
    584 F.2d 111 (5th Cir. 1978)………………………………………...………...6

*Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.,*
    25 F.3d 119 (2d Cir. 1994)………………………………………………………9

*Folio Impressions, Inc. v. Byer Cal.,*
    937 F.2d 759 (2d Cir. 1991)…………………………………………………10-11

*Gaste v. Kaiserman*,
    863 F.2d 1061 (2nd Cir. 1988)…………………………………………………5-7

*Green v. Lindsey,*
    1992 WL 373124 (S.D.N.Y. 1992)………………………………………………9

*Gund v. Russ Berrie & Co.,*
    701 F.Supp. 1013 (S.D.N.Y. 1988)………………………………...9-10, 16, 24

*Gund, Inc. v. Applause, Inc.,*
    809 F.Supp. 304 (S.D.N.Y. 1993)…………………………………...9-10, 24

*Hamil Am., Inc. v. GFI*,
    193 F.3d 92 (2d Cir. 1999)……………………………………………..10-11

*Harper & Row Publishers, Inc. v. Nation Enterprises,*
    471 U.S. 539 (1985)…………………………………………………………...12

*Hogan v. DC Comics,*
    48 F. Supp. 2d 298 (S.D.N.Y. 1999)……………………………7, 9, 11, 16, 24

*Ideal Toy Corp. v. Fab-Lu, Ltd.,*
    360 F.2d 1021 (2d Cir. 1966)……………………………………….9-10

*Jorgensen v. Epic/Sony Records,*
    351 F.3d 46 (2d Cir. 2003)………………………………………………...6

*Judi Boisson v. Banian, Ltt.,*
    273 F.3d 262 (2d Cir. 2001)……………………………………...7, 10-11, 24

*Knitwaves, Inc. v. Lollytogs Ltd.*,
 71 F.3d 996 (2d Cir. 1995)……………………………………………………………10, 24

*Laureyssens v. Idea Group Inc.*,
 964 F. 2d 131 (2nd Cir. 1992)………………………………………………………...9

*Lipton v. Nature Co.*,
 71 F.3d 464 (2d Cir. 1995)……………………………………………………...5-7, 10

*MCA, Inc. v. Wilson*,
 425 F. Supp. 443, 450 (S.D.N.Y. 1976)…………………………………………...13

*Miller Studio, Inc. v. Pacific Import Co.*,
 39 F.R.D. 62 (S.D.N.Y. 1965)……………………………………………………...5

*Nichols v. Universal Pictures Corp.*,
 45 F.2d 119 (2d Cir. 1930)……………………………………………………………16

*Nihon Keizai Simbun, Inc. v. Comline Bus. Data, Inc.*,
 166 F.3d 65 (2d Cir. 1999)…………………………………...…………………...10-11

*Northern Music Corp. v. King Record Dist. Co.*,
 105 F. Supp. 393 (S.D.N.Y. 1952)……………………………………………………7

*Novelty Textile Mills, Inc. v. Joan Fabrics Corp.*,
 558 F.2d 1090 (2d. Cir 1977)…………………………………………5, 7, 9-10, 24

*Peter Pan Fabrics, Inc. v. Dan River Mills, Inc.*,
 295 F. Supp. 1366 (S.D.N.Y. 1969)……………………………………………………5

*Repp v. Webber*,
 132 F.3d 882 (2d Cir. 1997)……………………………………………………...6-7

*Reyher v. Children's Television Workshop*,
 533 F.2d 87 (2d Cir. 1976)…………………………………………………………19, 22

*Roe-Lawton v. Hal Roach Studios*,
 18 F.2d 126 (C.D. Cal 1927)……………………………………………………...22

*Rogers v. Koons*,
 960 F.2d 301 (2d Cir. 1992)…………………………………………...………5-6

*Salinger v. Random House, Inc.*,
 811 F.2d 90 (2d Cir. 1987)…………………………………………………….……12

*Scott v. Almenas*,
     143 F.3d 105 (2d Cir. 1998)……………………………………………………..5

*Silverstein v. Penguin Putnam, Inc.*,
     2003 U.S. Dist. LEXIS 5487 (S.D.N.Y. 2003)………………………………………10

*Smith v. Little Brown & Co.*,
     245 F. Supp. 451 (S.D.N.Y. 1965)……………………………………………….7

*Sofitel, Inc. v. Dragon Med. and Scient. Commns, Inc.*,
     118 F.3d 955 (2d Cir. 1997)……………………………………………………25

*Streetwise Maps, Inc. v. Vandam, Inc.*,
     159 F.3d 739 (2d Cir. 1998)……………………………………………………10

*Sylvestre v. Oswald*,
     1993 U.S. Dist. LEXIS 7002 (S.D.N.Y. 1993)………………………………..6-7, 9

*Twentieth Century-Fox Film Corp. v. MCA, Inc.*,
     715 F.2d 1327 (9th Cir. 1983)……………………………………………………5

*Twin Peaks Productions, Inc. v. Publications Int'l, Ltd.*
     996 F.2d 1366 (2d Cir. 1993)……………………………………………………11

*Walker v. Time Life Films, Inc.*,
     784 F.2d 44 (2d Cir. 1986)………………………………………...10-11, 16, 23

*Walt Disney Prodns v. Air Pirates*,
     581 F.2d 751 (9th Cir. 1978)……………………………………………………..5

*Warner Bros. v. American Broadcasting Cos.*,
     720 F.2d 231 (2d Cir. 1983)…………………………………………………16, 19

*Warner Bros., Inc. v. Gay Toys, Inc.*,
     724 F.2d 327 (2d Cir. 1983)……………………………………………………..5

*Williams v. Crichton*,
     84 F.3d 581 (2d Cir. 1996)……………………………………………………..11

## STATE CASES

*Golding v. RKO Radio Pictures, Inc.*,
     193 P.2d 153 (Cal.App. 1948)………………………………………………...15

## **FEDERAL STATUTES**

17 U.S.C. § 106…………………………………………………………………......6

17 U.S.C. § 410(c)…………………………………………………………………..6

## **FEDERAL RULES**

Fed. R. Civ. Proc. 56(c)………………………………………………………….4

## **MISCELLANEOUS**

Latman, *"Probative Similarity" as Proof of Copying: Toward Dispelling Some
        Myths in Copyright Infringement*, 90 Colum.L.Rev. 1187 (1990)…………………......9

3-12 *Nimmer on Copyright* § 12.10……………………………………………..6

3-13 *Nimmer On Copyright* § 13.02……………………………………………6

4-13 *Nimmer on Copyright* § 13.03……………………………………………..11

## <u>INTRODUCTION</u>

In 1978, Plaintiff Robert Fiveson ("Fiveson") produced and directed an independent feature film called "Parts: The Clonus Horror" ("CLONUS"), first released in 1979. Though produced on a budget of $257,000, which was tight even by 1970's standards, the film had a very memorable story twist or "hook" as they say in the entertainment industry. The childlike lives of the inhabitants of a seemingly utopian but regimented colony are dominated by the indoctrinated myth of a remote paradise called America for which they yearn to be chosen. One, distinguished from the rest by his impatient curiosity, learns the awful truth that he and his co-habitants are merely human clones serving as spare parts banks for the social elite. Being chosen to go to "America" means certain death. He escapes at all cost to confront his human counterpart in the real world and the truth.

In 2004, Michael Bay produced and directed a Studio blockbuster entitled "The Island" ("THE ISLAND") for Defendants Dreamworks and Warner Bros. Entertainment, Inc. ("Defendants") on a budget of $126 million. Upon its release in 2005, it elicited an undeniable spontaneous public outcry from film critics and ordinary audience members alike that it was an un-credited "remake," "a rip-off," "a clone" of CLONUS.

Notwithstanding Defendants' unlimited storytelling resources, all the directions they could have taken their film, and all the different choices they could have made along the way, THE ISLAND was uncannily the same as CLONUS, only the mythic paradise is called "The Island." Not only was the "hook" identical, but most of the structure, sequence, pace, characters, themes and settings were the same. Even many "shots" were the same. THE ISLAND even inherits story flaws present in CLONUS. This is all the more remarkable given the enormous disparity in the films' budgets and the different times in which the films were produced. In fact, if you take away the gratuitous big budget action sequences, gadgetry and elaborate set designs from THE ISLAND you are left with CLONUS.

A pair of eyes and common sense reveals that the total concept and feel of both films are unmistakably and strikingly similar. No reasonable juror could find otherwise. Under such

circumstances, it is the law in the Second Circuit that summary judgment can and should be

granted in favor of the plaintiff whose copyright has been infringed.

Finally, Plaintiffs' assertion that there are no issues of material fact on its motion for

summary judgment due to *the Court's* ability to infer infringement from the *striking similarity* of

the subject films does not mean and should not be misconstrued as meaning that the converse is

true with respect to Defendants' cross-motion which is based on dubious claims of *no* "reasonable

possibility of access" to CLONUS or substantial similarity between the works.

**STATEMENT OF FACTS**

**I.   Plaintiff's Film: "CLONUS"**

In 1978, Plaintiff Clonus Associates was established by Fiveson (collectively, "Plaintiffs")

for the sole purpose of producing and distributing an original science fiction feature motion picture

entitled: "Parts: The Clonus Horror" ("CLONUS").  CLONUS was produced on a budget of

$257,000[1] and debuted in theaters on July 18, 1979, distributed by Group 1 Services.  (Declaration

of Robert Fiveson In Support Of Summary Judgment ("Fiveson Dec."), ¶ 6.

CLONUS became a *Sci-Fi* "cult" classic.  After playing in theaters, CLONUS was one of

the first movies to be released in the VHS home video format in the early 1980s and has

consistently been available ever since. *Id.*  VHS copies of CLONUS have been readily available

on the internet since the late nineties. (Fiveson Dec., ¶¶ 6, 8).  In addition, CLONUS aired twice

on CBS, and has repeatedly aired on the Sci-Fi Channel and *Mystery Science Theater 3000*, as

well as on national and regional cable channels, including Showtime, HBO, USA Nationwide,

Cablevision, and Time Warner Cable.  (Fiveson Dec., ¶¶ 6, 7).

In 1979, CLONUS was awarded a "Saturn" for "Best Low Budget Picture" presented by

Roger Corman on a nationally televised awards ceremony of The *Academy of Science Fiction*

---

[1] Despite this very tight budget, CLONUS starred a number of well known actors, attracted to its unique concept, including: Peter Graves (*Mission Impossible* television series, *Airplane!*); Dick Sargent (*Bewitched* television series); Tim Donnelly (*Emergency* television series); Keenan Wynn (the General in *Dr. Strangelove* and 202 other features by 1978); Paulette Breen (*All My Children*); and Lurene Tuttle (*Life With Father* television series). (Fiveson Dec., ¶ 3).

*Fantasy and Horror.* (Fiveson Dec., ¶ 5). It has been written up in numerous film guides, on-line movie databases and *Sci-Fi* websites; is featured in a best-selling independent production teaching text;[2] was licensed in 1997 for a Learning Channel documentary, and was requested for a national traveling exhibit on cloning organized in 2001 by the American Museum of Natural History. (Fiveson Dec. ¶ 9).

Plaintiff Clonus Associates hold a certificate of copyright registration for CLONUS from the U.S. Copyright Office bearing the registration number PA 395-890. (Fiveson Dec., ¶ 2; First Amended Complaint ("FAC"), Ex. 1). Plaintiffs are the sole proprietors of all right, title and interest in the CLONUS copyright. (Fiveson Dec., ¶ 2, 13).

## II.   Defendants' Film: "THE ISLAND"

Defendants are large sophisticated entertainment Studios whose businesses are based to a large extent on the value and exploitation of intellectual property. Among other activities, Defendants develop, produce, finance and distribute feature motion pictures for release theatrically as well as in various ancillary media, ranging from home video to free and pay television.

In early 2004, Dreamworks purchased a feature film screenplay entitled "THE ISLAND" for $1 million against $1.5 million upon production. (Declaration of Marc Toberoff In Support Of Summary Judgment ("Toberoff Dec."), ¶ 6, Ex. C). The screenplay had been written "on spec" (i.e., not commissioned) by Caspian-Tredwell Owen ("Owen") who previously had written only one produced screenplay: *Beyond Borders* (2003). *Id.* Dreamworks hired Michael Bay to direct THE ISLAND and fast-tracked the production of the picture for a Summer, 2005 release. *Id.*

Dreamworks and Michael Bay brought in the screenwriting team of Alex Kurtzman and Roberto Orci to revise Owen's screenplay. THE ISLAND commenced photography in or about October, 2004 and was completed just prior to its scheduled U.S. theatrical film release on July 22, 2005. *Id.* The production budget of THE ISLAND is reported to be approximately $126

---

[2] The production history of CLONUS is featured in detail in *The Indie Producers Handbook* (pp. 7, 18, 21, 82, 96, 97, 125) in publication since 2002. Currently in bookstores, it has sold thousands of copies and is used by Universities throughout the United States as a definitive reference text for independent production. (Fiveson Dec., ¶ 4).

million. *Id.* The film was released on DVD in the U.S., commencing on December 13, 2005.

The striking similarities between THE ISLAND and CLONUS led a substantial number of film critics and audience members to spontaneously conclude that it is an unacknowledged "remake" or "rip-off" of CLONUS. (Toberoff Dec., Exs. A, B).

At no time did Plaintiffs assign or license any rights in CLONUS to Defendants or otherwise permit them to copy or remake their film. (Fiveson Dec., ¶ 13). By a cease and desist letter dated July 6, 2005, Plaintiffs informed Defendants that THE ISLAND infringes the CLONUS copyright. Dreamworks denied this and Warner Bros. did not respond. *Id.*

Despite Defendants' knowledge of Plaintiffs' copyright and widespread public objections to THE ISLAND'S blatant copying of CLONUS, Defendants steamrolled ahead with their infringing film in wanton disregard for Plaintiffs' rights under the Copyright Act.

## ARGUMENT

### I.   Legal Standard

#### A.   Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides for summary judgment when "there is no genuine issue as to any material fact and [] the moving party is entitled to judgment as a matter of law." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-50, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). The moving party bears the initial burden of identifying evidence that demonstrates the absence of a genuine issue of material fact for trial. *Id.* at 256; *see Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). The burden then shifts to the non-moving party to establish that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324. A fact is "material" only if it affects the outcome of the suit under the governing substantive law. *Consarc v. Marine Mid. Bank,* 996 F.2d 568, 572 (2d Cir. 1993), *citing Liberty,* 477 U.S. at 248.

In determining whether summary judgment is appropriate, the court resolves all ambiguities and draws all reasonable inferences against the moving party. *See D'Amico v. City of New York*, 132 F.3d 145, 148 (2d Cir. 1998), *cert. denied*, 141 L. Ed.2d 151, 118 S. Ct. 2075 (1998). However, the moving party is not required to affirmatively disprove unsupported

assertions made by the non-movant, *see Celotex*, 477 U.S. at 323; and if the non-movant's evidence is "merely colorable and not significantly probative, summary judgment may be granted." *Scott v. Almenas*, 143 F.3d 105 (2d Cir. 1998), *quoting Liberty,* 477 U.S. at 249-250.

## II.    THE ISLAND Infringes CLONUS' Copyright As A Matter Of Law

To prevail on their copyright infringement claim, Plaintiffs must establish "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications v. Rural Tel. Service Co.*, 499 U.S. 340, 361, 111 S. Ct. 1282 (1991). As direct evidence of copying is seldom available, a plaintiff may prove copying indirectly by demonstrating "probative similarity" (previously "substantial similarity"), a reasonable possibility of access, and unlawful appropriation pursuant to an "ordinary observer" test. *Castle Rock Entertainment, Inc. v. Carol Pub. Group, Inc.,* 150 F.3d 132, 137 (2d Cir. 1998); *Gaste v. Kaiserman,* 863 F.2d 1061, 1066 (2d Cir. 1988); *Novelty Textile Mills, Inc. v. Joan Fabrics Corp.,* 558 F.2d 1090, 1092 (2d Cir. 1997). The "decision-maker, whether it be a judge or a jury, need not have any special skills other than to be a reasonable and average lay person" in assessing copyright infringement. *Rogers v. Koons*, 960 F.2d 301, 308 (2d Cir. 1992).

It is also well settled that summary judgment may be granted to the plaintiff in copyright infringement actions upon a showing of *striking similarity* between the contested works. *See Lipton v. Nature Co.*, 71 F.3d 464, 471 (2d Cir. 1995); *Rogers,* 960 F.2d at 307; *Peter Pan Fabrics, Inc. v. Dan River Mills, Inc.,* 295 F.Supp. 1366, 1369 (S.D.N.Y. 1969), *aff'd*, 415 F.2d 1007 (2d Cir. 1969); *Arnstein v. Porter*, 154 F.2d 464, 468-469 (2d Cir. 1946); *Miller Studio, Inc. v. Pacific Import Co.*, 39 F.R.D. 62, 66 (S.D.N.Y. 1965); *Design Options v. Bellepointe, Inc.*, 940 F. Supp. 86, 89 (S.D.N.Y. 1996); *Twentieth Century-Fox Film Corp. v. MCA, Inc.*, 715 F.2d 1327, 1330 (9th Cir. 1983); *Walt Disney Prodns v. Air Pirates*, 581 F.2d 751 (9th Cir. 1978).

Under such circumstances, "summary judgment is favored in this Circuit." *Act Young Imports, Inc. v. B&E Sales Company, Inc.*, 673 F. Supp. 672, 673 (S.D.N.Y. 1987) (granting summary judgment on plaintiff's copyright infringement claim and deciding issues of copyright ownership, copying, willfulness and likelihood of confusion as a matter of law).

On summary judgment, Courts look to see if the accused work is so substantially similar to the copyrighted work that reasonable jurors could not differ on this issue.[3]  *Rogers*, 960 F.2d at 307; 3-12 *Nimmer on Copyright* § 12.10 ("[I]f the resemblance is so overwhelming as to mandate a finding of substantial similarity, the court should grant summary judgment to plaintiff.").

Thus, if the contested works are "strikingly similar as to preclude the possibility of independent creation, copying may be proved without a showing of access." *Repp v. Webber*, 132 F.3d 882, 889 (2d Cir. 1997); *Lipton*, 71 F.3d at 471; *Gaste*, 863 F.2d at 1068 (2d Cir. 1988); *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 56 (2d Cir. 2003); *Arnstein* 154 F.2d at 468-469; *Sylvestre v. Oswald,* 1993 U.S. Dist. Lexis 7002, at *6, 1993 WL 179101, at *1 (S.D.N.Y. 1993); *see also Ferguson v. National Broadcasting Co.,* 584 F.2d 111, 113 (5th Cir. 1978); 3-12 *Nimmer on Copyright* § 12.10.

### A.        Plaintiffs Own A Valid Copyright In CLONUS

There can be no doubt that Plaintiffs own a valid copyright in CLONUS which Plaintiffs duly registered with the U.S. Copyright Office.  *See* Certificate PA 395-890, FAC, Ex. 1, Fiveson Decl., ¶ 2; 17 U.S.C. § 410(c).

### B.        Defendants Unlawfully Copied CLONUS

Dreamworks' production and release of THE ISLAND directly infringes the CLONUS copyright, including Plaintiffs' right to make copies and to authorize and produce derivative motion pictures based on CLONUS.  *See* 17 U.S.C. § 106(1), (2).  Plaintiffs can readily establish the elements of Defendants' copyright infringement.

#### 1.        Defendants Had Access To CLONUS As A Matter Of Law

"There is an inverse relationship between access and probative similarity such that the stronger the proof of similarity, the less the proof of access is required." *Jorgensen*, 351 F.3d at 56.  "A more common circumstance requiring no independent proof of access occurs when the similarity between plaintiff's and defendant's works is sufficiently striking…" 3-13 *Nimmer On*

---

[3] In other words, in granting summary judgment on the basis of striking similarities between the original and accused work, the Court finds that no reasonable juror could find that the works do not reflect probative similarities.

*Copyright* § 13.02.  Here access is established as matter of law due to the striking similarities between THE ISLAND and CLONUS, and is not defeated on summary judgment based on the denials of Defendants' highly interested witnesses.  *See Repp,* 132 F.3d at 889; *Lipton,* 71 F.3d at 471; *Gaste,* 863 F.2d at 1068.

Additionally, the plaintiff in a copyright infringement action need only show "a reasonable possibility of access" because the defendants are rarely caught in the act of copying and usually engage in self-serving denials.  *Gaste,* 863 F.2d at 1066; *Novelty Textile,* 558 F.2d at 1092; *Sylvestre,* 1993 U.S. Dist. Lexis 7002, at *8.  "A reasonable possibility of access" means just what it says.  Plaintiffs must show only that Defendants had a reasonable *opportunity* to see the Plaintiffs' work.  *Id.*; *Bevan v. Columbia Broadcasting System, Inc.*, 329 F. Supp. 601, 604 (S.D.N.Y. 1971) ("To establish access, a plaintiff need show no more than that defendant had a reasonable opportunity to view [ ] plaintiff's work."), *citing Blazon, Inc. v. Deluxe Game Corp.,* 268 F. Supp. 416, 422 (S.D.N.Y. 1965); *see Smith v. Little Brown & Co.*, 245 F. Supp. 451 (S.D.N.Y. 1965), *aff'd*, 360 F.2d 928 (2d Cir. 1966).

A "reasonable possibility of access" is established by showing wide dissemination of the infringed work or a "particular chain of events or 'link' by which the alleged infringer might have gained access to the work" *Boisson v. Banian, Ltd.*, 273 F.3d 262, 270 (2d Cir. 2001); *see also CBS Broadcasting Inc. et al. v. ABC, Inc., et* al, 2003 U.S. Dist. LEXIS 20258 (S.D.N.Y. 2003); *Hogan v. DC Comics*, 48 F. Supp. 2d 298 (S.D.N.Y. 1999).  In this respect it is obviously far easier to show a reasonable possibility of access to a published work like CLONUS than to an unpublished work.  "Priority of publishing in itself raises a presumption that Defendant had contact [access]."  *Northern Music v. King Record Dist..,* 105 F. Supp. 393, 398 (S.D.N.Y. 1952).

Defendants clearly had a "reasonable possibility of access" to CLONUS or a "reasonable opportunity to view" CLONUS.  CLONUS is a known film having been distributed theatrically, on television, and home video.  CLONUS is easily referenced as one of only a handful of films concerning cloning, on internet websites customarily researched by members of the entertainment industry (e.g., *IMDB.com*).  VHS copies of CLONUS were readily available on-line to those

involved in the development and production of THE ISLAND.  (Fiveson Dec., ¶¶ 4-9).

The public's immediate comparison of THE ISLAND to CLONUS, itself evidences that CLONUS was in no way obscure and that defendants shared the same if not greater access to this *Sci-Fi* cult classic.  In fact, it is impossible to imagine that all those people which spontaneously reacted to THE ISLAND as a "remake" had seen and remembered CLONUS, yet that those involved with THE ISLAND, backed by Defendants' sophisticated motion picture development and production departments,[4] did not have "a reasonable opportunity to view" CLONUS.  *Id.*

In the words of Premiere Magazine:

"[T]he first hour of *The Island* plays like a much more expensive albeit scene-for-scene remake [of *Parts*: *The Clonus Horror*]. How this picture went through all of its phases of development and production without a single human being pointing out the rather uncanny plot similarities between the two pictures is something that, thanks to the good graces no doubt of the legal departments at Warner's and Dreamworks, we shall surely never, ever learn." *Premiere.com, July 22, 2005.* (Tob Dec., ¶ 4, Ex. A).

In addition to all of the above, there is clear evidence that Dreamworks had actual access to CLONUS, though this motion need not and does not rely on evidence of actual access.  *See Repp*, 132 F.3d at 889.  On December 8, 1998, Robert Sullivan the screenwriter of CLONUS wrote to Steven Spielberg enclosing a VHS copy of CLONUS.  Declaration of Robert Sullivan In Support Of Summary Judgment, ¶ 5, Ex. A.  Mr. Spielberg is one of the three principals of Dreamworks. He is in charge of its motion picture division and was closely involved in the development of THE ISLAND.[5]  Toberoff Dec. Ex. D (transcript of Caspian Tredwell-Owen's deposition, at 57:24-

---

[4] Defendants DreamWorks (e.g., *War of the Worlds* (2005); *Paycheck* (2003); *Minority Report* (2002); *Artificial Intelligence: AI* (2001)) and Warner Bros. (*Sky Captain and the World of Tomorrow* (2004); *The Matrix Revolutions* (2003); *The Matrix Reloaded* (2003); *The Time Machine* (2002); *Artificial Intelligence: AI* (2001); *The Matrix* (1999)) are noted for their science fiction films.

[5] Spielberg is clearly a science fiction buff: *Close Encounters of the Third Kind* (1977); *E.T. the Extra Terrestrial* (1982); *Twilight Zone: The Movie* (1983); *Jurassic Park* (1993); *Artificial Intelligence: AI* (2001); *Minority Report* (2002); *War of the Worlds* (2005); *Poltergeist* (1982) (producer); *Innerspace* (1987) (executive producer); *The Land Before Time* (1988) (executive producer); *Back to the Future II* (1989) (executive producer); *Arachnophobia* (1990) (executive

58:21, 148:16, 152:14); transcript of Alex Kurtzman at 46:1; transcript of Roberto Orci at 100:21). *See Hogan*, 48 F. Supp. 2d at 308, *citing Sylvestre*, U.S. Dist. LEXIS 7002, *8 ("chain of events or links by which the alleged infringer might have gained access to the work" is sufficient.).

### 2.     THE ISLAND Is Strikingly Similar To CLONUS

Most telling of Defendants' infringement are the conspicuous and striking similarities between THE ISLAND and CLONUS. "Probative similarity" is similarity which suggests copying. *See Castle Rock*, 150 F.3d at 137; *Hogan*, 48 F. Supp. at 308. In that regard, expert testimony is often useful. *Id.* Here, Plaintiffs' highly qualified and well recognized expert opined very strongly in favor of Plaintiffs' claim, concluding that the subject films are *strikingly similar.*

"Probative similarity" necessary to prove copying in this circuit need not be substantial. *See Laureyssens v. Idea Group Inc.,* 964 F. 2d 131, 140 (2nd Cir. 1992); *Green v. Lindsey,* 1992 WL 373124 at *11 (S.D.N.Y. 1992); Latman, *"Probative Similarity" as Proof of Copying: Toward Dispelling Some Myths in Copyright Infringement,* 90 Colum. L. Rev. 1187 (1990).

"When evaluating probative similarity, a court should compare the works in their entirety, including both protectable and unprotectable elements." *CBS Broadcasting Inc.*, 2003 U.S. Dist. LEXIS 20258, *3 (S.D.N.Y. 2003), citing *Fisher Price, Inc., v. Well Made Toy Manufacturing Corp.,* 25 F.3d 119, 123 (2d Cir. 1994).

That the plot, characters, relationships, dialogue, themes, setting, locale, the sequencing and interplay of these elements and the total concept and feel of CLONUS and THE ISLAND are substantially and confusingly similar cannot be overstated, both quantitatively and qualitatively. Even the most cursory screening of the two films reveals glaring similarities. The Court is respectively referred to the comparative matrix of similarities attached as Exhibit "C" to the accompanying Declaration of Lew Hunter In Support Of Summary Judgment ("Hunter Dec.") Ex. C. which is substantially more detailed and in-depth than the preliminary examples set forth in Plaintiffs' First Amended Complaint and prior motion for preliminary injunctive relief.

---

producer); *Men In Black* (1997) (executive producer); *Men In Black II* (2002) (executive producer); *When Worlds Collide* (2006) (producer).

THE ISLAND even adopts structural or plotting flaws in CLONUS.  For instance, both films jump into their settings without establishing any sense of time or place. Both films similarly jump in with the lead character exasperated and questioning his existence leaving the audience to wonder what caused this or for how long he has been an angst ridden complainer.  Both films have the protagonist risking life and limb to meet his human double once he escapes without any motivation in the plot since by that time, he already knows the truth about himself, the institute and "The Island"/ "America."  *See Eckes v. Card Prices Update*, 736 F.2d 859, 863 (2nd Cir. 1984) ("Courts have regarded the existence of common errors in two similar works as strongest evidence of piracy"); *Lipton*, 71 F.3d at 471-472; *Silverstein v. Penguin Putnam, Inc.*, 2003 U.S. Dist. LEXIS 5487 * 21 (S.D.N.Y. 2003)

### 3.    Under The "Ordinary Observer" Test, Defendants Unlawfully Appropriated CLONUS

Unlawful appropriation, the remaining element of copyright infringement, exists if there is a substantial similarity between the two works under the "ordinary observer" test, which asks "whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Ideal Toy Corp. v. Fab-Lu, Ltd.*, 360 F.2d 1021, 1022 (2d Cir. 1966); *Arica Inst. v. Palmer,* 970 F.2d 1067, 1072 (2d Cir. 1992).  "The key to the ordinary observer test is therefore the similarities rather than the differences." *Novelty Textile Mills,* 558 F.2d at 1093 n.4; *Gund, Inc. v. Applause, Inc.,* 809 F.Supp. 304, 308 (S.D.N.Y. 1993); *Gund v. Russ Berrie & Co.,* 701 F.Supp. 1013, 1021 (S.D.N.Y. 1988).  The test asks whether "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and describe the aesthetic appeal of the two works as the same." *Judi Boisson v. Banian, Ltt.*, 273 F.3d 262, 272 (2d Cir. 2001), citing *Folio Impressions, Inc. v. Byer Cal.*, 937 F.2d 759, 765 (2d Cir. 1991).

After *Folio Impressions*, 937 F.2d at 764, where the plaintiff designer's fabric clearly used a background in the public domain, the Second Circuit adopted the "discerning ordinary observer test," whereby the court compares the copyrightable elements of the plaintiff's work.  Where, however, the plaintiff's work does not clearly import material from the public domain, the

"discerning" test is unnecessary. *Boisson*, 273 F.3d at 272, *citing Hamil Am., Inc. v. GFI*, 193 F.3d 92, 101-02 (2d Cir. 1999), *cert. denied*, 528 U.S. 1160, 120 S.Ct. 1171 (2000).

In applying the "discerning observer test," *Boisson*, 273 F.3d at 272 holds:

> "[A] court is not to dissect the works at issue into separate components and compare only the copyrightable elements. *Knitwaves[,Inc. v. Lollytags Ltd.*, 71 F.3d 996], 1003. To do so would be to take the "more discerning" test to an extreme, which would result in almost nothing being copyrightable because original works broken down into their composite parts would usually be little more than basic unprotectible elements like letters, colors and symbols. *Id.* This outcome--affording no copyright protection to an original compilation of unprotectible elements--would be contrary to the Supreme Court's holding in *Feist Publications*."

Instead, it is well settled in this circuit that in applying the "ordinary observer test" or the "discerning ordinary observer test," the courts compare the ***total concept and feel*** of the contested works. *Boisson*, 273 F.3d at 272, citing *Knitwaves*, 71 F.3d at 1003; *Streetwise Maps, Inc. v. Vandam, Inc.*, 159 F.3d 739, 748 (2d Cir. 1998); *Nihon Keizai Simbun, Inc. v. Comline Bus. Data, Inc.*, 166 F.3d 65, 70-71 (2d Cir. 1999) (focused not on whether facts were protected but whether the structure and organization of the facts were substantially similar). The determination requires an "examination of the works themselves." *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 49 (2d Cir. 1986), *cert. denied,* 476 U.S. 1159 (1986); *see Nihon Keizai Simbun*, 166 F.3d at 70-71.

In the Second Circuit a defendant is guilty of copyright infringement if it has "appropriated the fundamental essence or structure of plaintiff's work." *Arica Institute, Inc. v. Palmer*, 970 F.2d 1067, 1073 (2d Cir. 1992), *quoting* 4-13 *Nimmer on Copyright* § 13.03[A][1] (defining "comprehensive non-literal similarity"); *see also, Twin Peaks Productions, Inc. v. Publications Int'l, Ltd.* 996 F.2d 1366, 1372 (2d Cir. 1993) (describing "comprehensive non-literal" infringement as "global similarities in structure and sequence.").

In evaluating infringement between literary works, the examination encompasses "the similarities in such aspects as the total concept and feel, theme, characters, plot, sequence, pace and setting." *Williams v. Crichton*, 84 F.3d 581, 588 (2d Cir. 1996); *Hogan*, 48 F. Supp. 2d at 309. "Even in applying the ordinary observer or discerning observer test, however, a court must examine the 'total concept and feel' of the work." *Hogan*, 48 F. Supp. 2d at 309. "Even when

11

two works are dissimilar in many respects, substantial similarity between them may still be found where their similarities are important in the overall context, whether qualitatively or quantitatively." *Hogan*, 48 F. Supp. 2d at 309.[6]  In essence, a court's "analysis of the 'total concept and feel' should be instructed by common sense." *Boisson*, 273 F.3d at 273; *see Hamil Am.*, 193 F.3d at 102 ("total concept and feel" guided by "good eyes and common sense.").

It is unmistakable that THE ISLAND is a remake of CLONUS.  No reasonable juror, upon screening both films, could find otherwise. THE ISLAND is strikingly similar to CLONUS in total concept and feel, and in their expression of themes, characters, plot, sequencing, pace, setting, dialogue, mood and tone.  We respectfully urge the Court to view in their entirety the DVD copies of CLONUS (Declaration of Nicholas Williamson In Support Of Summary Judgment ("Williamson Dec."), Ex. A,) and THE ISLAND (Williamson Dec., Ex. B) filed herewith.

Perhaps the most persuasive evidence that Plaintiffs' infringement claim passes this circuit's "ordinary observer" test are the spontaneous reactions of actual lay observers and film critics alike to the striking similarities between CLONUS and THE ISLAND.  Such immediate, natural third party responses to THE ISLAND as a "remake," a "rip-off," "a clone" of CLONUS (in some cases by people who remember CLONUS from 26 years ago) is persuasive, indeed. (Toberoff Dec., Exs. A, B).  "Certainly there can be no dispute that the spontaneous and immediate reactions of the ordinary observer are relevant evidence in determining the existence of copying." *MCA, Inc. v. Wilson*, 425 F. Supp. 443, 450 (S.D.N.Y. 1976), quoting *Nimmer on Copyright*, § 143.52.

The following public comments are illustrative:

"'The Island,' is an un-credited rip-off of a low-budget 1979 flick, 'Parts: The Clonus Horror'...The similarities in dialogue and plot points are too many to list here.  In a

---

[6] The Supreme Court and the Second Circuit have been especially vigilant in protecting the creative "heart" of a work from copying in alleged "fair use" cases. *See Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 564-65, 105 S. Ct. 2218, 85 L. Ed. 2d 588 (1985) (magazine's unauthorized use of verbatim quotes from the heart of unpublished Ford memoirs); *Salinger v. Random House, Inc.*, 811 F.2d 90 (2d Cir. 1987), *cert. denied*, 484 U.S. 890, 108 S. Ct. 213, 98 L. Ed. 2d 177 (1987) (use of virtually all of the most interesting passages from plaintiff's unpublished letters).

nutshell, both movies begin in a fitness paradise that turns out to be a meat factory for
human clones, raised as spare parts for people in the real world, and living in a dream
world while minded by guards in track suits. Then, The Island's screenwriters were lazy
enough to steal, for its titular plot device, the cleverest and most unsettling notion of the
original, the pie-in-the-sky myth that the keepers use to keep the clones docile.  Instead of
being told they're going to the slaughter, the clones are told they'll be going to a
wonderland called 'America.'  Here it's a paradise called 'The Island.'" *Media.ork.com*
(Toberoff Dec., Ex. B).

_____

"I liked 'The Island' the first time... when it was called 'PARTS: The Clonus
Horror.'" *Monitorduty.com* (Toberoff Dec., Ex. B).

_____

"More dedicated viewers will recognize that practically all of the key story points seen – a
mysterious facility where clones unaware of their true purpose are raised for spare parts,
one clone beginning to question his existence, a vague and secret romance with a fellow
clone, the discovery of the real world, an escape to the real world and a meeting with the
original and less-than-helpful version–come directly from a little-known 1978 B-movie
title called 'Parts: The Clonus Horror.' This isn't just an act of homage on the level of Rob
Zombie appropriating imagery from 'Last House on the Left' for 'The Devil's Rejects' or
Quentin Tarantino raiding the memories of his misspent youth – this is outright theft done
to such a scale that you have expect Peter Graves to suddenly pop up." *Efilmcritic.com*
(Toberoff Dec., Ex. B).

_____

"Unfortunately, whatever cautionary or entertainment value *The Island* may have
must be considered stolen goods.  The premise, plot and even specific plot points
have all been essentially plagiarized from another film, one that Bay and writer
Caspian Tredwell-Owen (presumably the real culprit) can confidently count on
viewers flocking to multiplexes (and later to DVD stores) not having heard of, let
alone seen…Fans of cult sci-fi may notice overt echoes of *Logan's Run, Gattaca* or
*THX-1138*.  The real source, though, is a 1979 sci-fi cheapie called *The Clonus
Horror*. (Article proceeds to describe plot convergences in great detail)."
*Catholicexchange.com* (Toberoff Dec., Ex. B).

_____

"Some of the story and visual elements will remind viewers of LOGAN'S RUN and THX-
1138 (with a tiny bit of BLADE RUNNER thrown in), but the film truly is a remake of
THE CLONUS HORROR, although there is no acknowledgement of this in the credits.
Especially the first third is very close, presenting the audience with a phony "reality" that
the characters accept and then providing glimpses behind the scenes that show us what is
really happening." *Hollywoodgothic.com* (Toberoff Dec., Ex. B).

_____

"Anyone who's seen the trailer or a sneak preview and has also seen the film <u>Clonus</u> (also
known as <u>Parts: The Clonus Horror</u>) — a film which was shown on CBS, the Sci-Fi

Channel, and even Mystery Science Theater 3000 — knows that the plots are way too similar to be mere coincidence." *Agonybooth.com* (Toberoff Dec., Ex. B).

————————————

"Many of the reviews for Michael Bay's new science-fiction actioner, *The Island*, have noted its similarity to the films *THX-1138*, *Coma*, *Logan's Run*, and *The Matrix*. Although *The Island* stands guilty on all counts of borrowing liberally from these earlier movies, especially the 1976 cult non-classic *Logan's Run*, it is really a near-exact remake— uncredited and certainly unpaid—of the 1979 low-budget thriller *The Clonus Horror*, directed by Robert S. Fiveson."

————————————

"Making matters worse, *The Island* is actually a remake of *The Clonus Horror*." *Moviehabit.com* (Toberoff Dec., Ex. B).

————————————

"Anyone who's seen *Clonus* would immediately recognize *The Island* for what it is: a remake. The only real difference I could determine (besides Bay's inflated-budget action sequences) is that, in *Clonus*, the clones are created by self-serving politicians, whereas in The Island they are created by self-serving ultra ultra-rich." *Sci-fi.com/sf weekly* (Toberoff Dec., Ex. B).

————————————

"The plot convergences between *The Island* and *The Clonus Horror* are so overt that the IMDb.com "Movie Connections" links for both films flatly describe *The Island* as a "remake" of *The Clonus Horror*." *Catholicexchange.com* (Toberoff Dec., Ex. B).'

————————————

"Finally, while the story recalls similar themes such as those in Michael Anderson's 'Logan's Run,' Michael Crichton's 'Coma,' and Scott Campbell's 'Final,' it is a direct ripoff of Robert S. Fiveson's 1979 'Clonus,' a.k.a. 'The Clonus Horror,' distributed by Mondo Macabro–except that in the Fiveson version, America, rather than The Island, is the goal of the lottery 'winners.'" *Azreporter.com* (Toberoff Dec., Ex. B).

————————————

"So, is 'The Island' a remake of 'The Clonus Horror' or did it just harvest parts from it?" *VH1.com* (Toberoff Dec., Ex. A).

————————————

"As far as I can tell 'The Island,' is a flashy remake of …'The Clonus Horror,' which starred Peter Graves, Keenan Wynn, and Dick Sargent (the second Darren on Bewitched)…Is there more to 'The Island,'or is it truly that much of a rip-off? *Rottentomatoes.com* (Toberoff Dec., Ex. B).

————————————

"You know, I was wondering the exact same thing. They should at least give a tribute to Clonus in the credits or something if this is a remake of that old movie (which I've only

14

seen because I was a huge Mystery Science Theater fan!)." *Id.*

_____

"It's absolutely a remake of Clonus. It's like Vanilla Ice taking David Bowie's beat
for 'Pressure,', making some barely perceptible changes, and calling it original." *Id.*

Moreover, the Internet Movie Database (*IMDB.com*), a common resource for credits in the

motion picture industry, listed THE ISLAND as a "remake" of CLONUS. Toberoff Decl., Ex. A.

The immediate reaction to the two films as strikingly similar is particularly significant

when one considers (i) that THE ISLAND with a $126 million budget had vastly greater

storytelling options (including elaborate special effects and sets) than did CLONUS ($257,000

budget); and (2) the differences in the era in which each film was produced (2004 vs. 1978) would

naturally lead to dissimilarities between the films.  Notwithstanding these countervailing

influences the two films are far more alike than many *acknowledged* Hollywood remakes.[7]

### a.   Plot

A film's plot consists of "the story or narrative.  It is the designed sequence of connected

incidents.  It is the thing which moves the [work] from cause to effect.  It means, as its etymology

implies, a weaving together."  *Golding v. RKO Radio Pictures, Inc.*, 193 P.2d 153, 163 (Cal.App.

1948), *aff'd* 35 Cal. 2d 690 (1950).  In assessing copyright infringement courts are to determine

whether the fundamental essence and structure of the works are substantially similar.  *See Arden v.*

*Columbia Pictures Industries, Inc.*, 908 F.Supp. 1248, 1260 (S.D.N.Y. 1995); *Nichols v. Universal*

*Pictures Corp.*, 45 F.2d 119, 121 (2d Cir. 1930) ("We do not doubt that two plays may correspond

in plot closely enough for infringement.").

A review of CLONUS and THE ISLAND reveals that their structure, sequencing and plot

are strikingly similar. The following is a plot summary which is equally accurate to both

CLONUS and THE ISLAND:

_____

[7]  See e.g., *The Hills Have Eyes* (2006) /  *The Hills Have Eyes* (1977); *Guess Who* (2005) / *Guess*
*Who's Coming To Dinner* (1967); *Dawn Of The Dead* (2004) / *Dawn Of The Dead* (1978); *I SPY*
(2002) / *I SPY* television series (1965); *Gone In Sixty Seconds* (2000) / *Gone In 60 Seconds*
(1974); *The Haunting* (1999) / *The Haunting of Hill House* (1963); *The Mummy* (1999) / *The*
*Mummy* (1932); *You've Got Mail* (1998) /  *The Shop Around The Corner* (1940); *Scarface* (1983) /
*Scarface* (1932); *The Thing* (1982) / *The Thing From Another World* (1951).

The main character, from whose perspective the story is told, is a resident of a seemingly utopian but strictly regimented colony where every move of its docile inhabitants is closely monitored and controlled by the doctors and guards running the colony. Their innocent, child-like lives are dominated by the indoctrinated myth of an idyllic remote paradise ("The Island" in THE ISLAND / "America" in CLONUS) that the residents only know from images. They yearn to be chosen for this special place, a cause for celebration.  Our protagonist, however, is different, curious, and impatiently questions why things are as they are.  He falls in love with a more naïve, yet inquisitive, female which catalyzes his emerging humanity and need for the truth, while troubling the chief doctor at the facility.  In time he discovers that everything about his world is a lie and that he and his co-habitants are human clones whose purpose is to serve as spare parts banks to extend the lives of their sponsors -- the elite of society.  Being chosen for "The Island"/"America," a myth to keep the clones hopeful, means certain death.  He makes a daring escape and is pursued relentlessly by the forces of the sinister institute which insist that clones are mere "things."  He enlists the aid of a sympathetic human in a race to meet his original and tries to expose the colony to the news media. After experiencing the bewildering real world and "humans" who help or betray him, he returns to the colony to save others like himself.  *See Comparative Matrix* (Hunter Dec., Ex. C).

"[A]s to plot, any dissimilarities [between the two films] are in total, few and minute when compared to the overwhelming amount of similarities." (Hunter Dec., Ex. B).  Moreover, judgments should be made on the qualitative and quantitative amount of similarities not dissimilarities in creative expression.  *See Hogan*, 48 F. Supp. 2d at 309; *Russ Berrie,* 701 F.Supp. at 1021.

## b.  Characters

In determining whether characters are similar, a court looks to the "totality of [the characters'] attributes and traits as well as the extent to which the defendant's characters capture the total concept and feel of figures in [plaintiff's work]."  *Walker,* 784 F.2d at 50; *see also, Hogan,* 48 F. Supp. 2d at 309.  What the character thinks, feels, says and does as well as the descriptions conveyed by the author through other characters' comments fill out the viewer's understanding of the character.  *Warner Bros. v. ABC*, 720 F.2d 231, 241. (2d Cir. 1983)  "At the same time, the visual perception of the characters tends to create a dominant impression against which the similarity of a defendant's character may be readily compared, and significant differences readily noted."  *Id.*

With regard to the characters in THE ISLAND and CLONUS, Professor Hunter opines as

16

follows:

> "As for characters and their similarities, 'res ipsa loquiter,' the thing speaks for
> itself. I am reminded of the critics and reviewers who, in a media chorus, stated that
> 'The Island,' in different words, appeared to be a remake of 'Clonus.' One or two
> characters in the 'The Island' having similarities to 'Clonus' might be explainable,
> but every major and some of the minor characters in 'The Island' mirror the
> motivations, psychological composition and action of the major and some of the
> minor characters in 'Clonus.'" (Hunter Dec., Ex. B).

The actors, producers and director of THE ISLAND, themselves have described the main

characters in THE ISLAND in a manner which just as easily describes the corresponding

characters in CLONUS. (Toberoff Dec., Ex. E).

Specifically, both movies show the hero/protagonist (Lincoln in THE ISLAND/Richard in

CLONUS) emerging from a regimented clone to a human being with the growing ability to love,

discern right from wrong, question authority, question his purpose and events at the facility, and to

help others, which leads to the protagonist's return to the facility in an attempt to save other clones

from their unknowing fate. From the start, he is discontent, a loner, reflective, wants more from

life, swims against the current and is driven to find out why things are the way they are. (Hunter

Dec., Ex. B,C; Toberoff Dec., Ex. E).

The films also have in common the significant female lead (Jordan in THE ISLAND /

Lena in CLONUS), both are very attractive, doe-eyed, perky blondes, who are sweet, innocent,

and firmly aspire to "The Island" / "America." While childlike, both are sexual, and distinctly

curious, as distinguished from the other clones. Both are attracted to the male protagonist, yet

need convincing by the hero that there is something amiss with the colony in which they are

unknowingly being held captive. While initially naïve and hesitant, both come to grips with their

reality, their emerging sexuality and humanity through trusting the hero. Both feels a soulful

connection to the hero and his shattering of their false reality draws them closer. *Id.*

The central antagonist in both films is a driven, calculating doctor/scientist (Dr. Merrick in

THE ISLAND / Dr. Jameson in CLONUS) who will stop at nothing in his obsessive quest for

science and power; and he is indifferent to suffering. He is patriarchal and very manipulative of

the clones, particularly the male lead. He is "hands-on" with respect to every aspect of the facility, intensely monitors the clones, particularly the male and female leads, and is easily incensed by any aberrant behavior. Ultimately, despite airs of a higher scientific purpose, he is willing to destroy anyone who presents an obstacle to his quest. While substantially similar to Dr. Jameson, Dr. Merrick who has a greater presence in THE ISLAND is even better described as Dr. Jameson (obsessive, indifferent, manipulative), combined with elements of Senator Knight (rationalizes immortality, power and inhumanity) and Walker (wealthy captain of industry) in CLONUS. *Id.*

Even a good number of the minor characters in THE ISLAND and CLONUS are substantially similar, if not the same. *Id.* In each film there is a big, strong, male clone, who can barely contain his excitement about being selected to go to "The Island" / "America" and sets the plot in motion. (Starkweather in THE ISLAND / George in CLONUS). Inevitably, this character wakes up on an operating table in horror. Through his shocking death, the audience and the film's disillusioned hero experience the horrible truth that being "chosen" for "The Island"/"America" means certain death. *Id.*

In the middle of each film, upon the hero's escape from the facility, he takes refuge with an empathetic character (McCord in THE ISLAND / Jake in CLONUS) at his home. Both characters are sympathetic "working class" mensches who do the right thing by helping the hero find his human counterpart, and then pay for it with their lives. In both movies this character has a hospitable, but extremely talkative, companion/wife who serves as a comedic counterpoint. (McCord's girlfriend in THE ISLAND / Jake's wife in CLONUS). In both films, her talkativeness is acknowledged; and the male character's resulting frustration, colors their relationship. *Id.*

In both films the hero seeks out his human counterpart in the beginning of the last Act (Tom Lincoln in THE ISLAND/Professor Knight in CLONUS). Each sponsor is a wealthy, educated successful professional. Both sponsors experience a sense of wonder at meeting their clone in the flesh. However, out of self-interest, both rationalize the inhumanity of cloning. Both are too close to the truth and end up dying at the hands of those trying to kill their clones. *Id.*

The President of the United States and his clone appear in both films. The guards are

similarly functional and are attired in very similar uniforms: dark jogging suits with white stripes

on their sleeves.  The guards closely monitor the clones who they treat in a condescending manner,

use similar dialogue, and report what they see to a central unseen authority on ear-mounted

communicators.  There are mercenaries in both films that will stop at nothing to track down the

hero, even murdering innocents, to prevent the truth about the cloning institutes from getting out.

c.        **Total Concept and Feel**

The "total concept and feel" of a work is comprised of the way an author "selected,

coordinated and arranged the elements of a work," *Feist*, 499 U.S. at 358, taking into

consideration similarities in "mood, detail or characterization." *Reyher v. Children's Television*

*Workshop*, 533 F.2d 87, 91-92 (2d Cir. 1976).  "If a defendant copies substantial portions of a

plaintiff's sequence of events, he does not escape infringement by adding original episodes

somewhere along the line." *Warner Bros., Inc. v. American Broadcasting Companies,* 720 F.2d

231, 241 (2d Cir. 1983).

The total concept and feel of THE ISLAND and CLONUS, dark science fiction/horror

thrillers, are strikingly the same.  Both films are told through the perspective of a lead male

inhabitant of an isolated, ostensibly utopian, but tightly controlled colony where the lives of its

mostly docile, child-like residents are dominated by the indoctrinated myth that they will be

chosen to go to a paradise ("The Island"/"America").  The residents are pampered with exercise,

nutrition and relaxation as in health spa, yet are closely monitored and manipulated by a

patriarchal head doctor/scientist through ubiquitous surveillance technology and guards.  The

terrible truth of the colony and its betrayal of its inhabitants are revealed to the audience at the

mid-point of the film when the protagonist discovers that his entire world is a lie.  Those in control

insist clones are mere things and rationalize their inhumanity as serving a higher good – but they

are all business.  Both films are pervaded by a narcissistic fixation with the body, health and

immortality, juxtaposed with fetishistic images of naked clones in bondage, writhing in plastic or

being dissected.

Both films jump into their stories by following the protagonist – a non-conforming

19

character, who questions his existence and is impatient for answers.  His emerging humanity and need for the truth is accelerated by a romance with another inhabitant who, while naïve, is also different from the rest.  As he gets closer to the truth, the audience experiences with him a growing paranoia as the stakes are raised and the pace intensifies to a struggle for his survival.  After he daringly escapes the colony he is driven to find and face his human counterpart, while relentlessly pursued by the forces who must stifle his truth.  The audience experiences the world through his innocent eyes, and through random acts of human kindness, betrayal and indifference, the clones' love story, and the lead's heroism, is left to ponder the question of what it means to be "human."

What follows are descriptions of the total concept and feel of THE ISLAND by those involved in making this film.  Without any doubt, these descriptions apply equally to CLONUS.  In fact, without the titles, it would be impossible to know which film was being described.

> "What immediately intrigued us about this script was that, instead of taking the perspective of a researcher or outside observer, The Island took the point of view of the clones themselves.  That struck us as a great way to tell the story in a much more emotional and personal way, because on one level, this is about science gone awry, but it is also about seeing the world through these innocent eyes."  Laurie MacDonald, Executive Producer, *The Island,* as quoted in an article entitled *Island Formation* located on-line at CelebrityWonder.Com. (Toberoff Dec., Ex. E).

> "We felt strongly that the reveal had to happen through the eyes of our main character, Lincoln, because the audience would be so closely tied to him.  Through Lincoln, they will know early in the first act that something feels wrong . . . and today's audiences are very savvy, so they will probably jump to the worst possible conclusion.  But, that said, the revelation happening from Lincoln's point of view is stunning."  *Alex Kurtzman,* Co-screenwriter, *The Island,* as quoted in *Island Formation* located at CelebrityWonder.Com. (Toberoff Dec., Ex. E).

> "Seeing it through his eyes is the reason it comes as a shock even if you think you know.  The first half hour or so of the movie commits itself to this other reality, and you might expect it to continue in a linear way and assume you know where it's going, but you don't. *Roberto Orci,* Co- Screenwriter, *The Island,* as quoted in *Island Formation* located at CelebrityWonder.Com. (Toberoff Dec., Ex. E).

In finding that the concept, feel and mood of THE ISLAND and CLONUS are "strikingly and basically the same," Professor Hunter states:

"The gathering of the clones to inform them about paradise. The suspense with the protagonist clone sneaking around the facility in search of answers. The clone love story. The defensive guards and their actions towards the clones. The soothing female voice communicating to the clones in each film. The celebrations of clones in both movies. The tracking of the clones in the original 'Clonus' as mimicked in the 'The Island' with somewhat different devices. Dream and chase sequences are key to both films. The utilization of a flying motorcycle instead of a bicycle in a chase. The protagonist clones obsession to learn the truth and to meet their human counterparts contribute identical emotions in audiences with their sameness in 'Clonus' and 'The Island.' The involvement of the U.S. government in each film's cloning institute endows them with an equal stature in an audience's mind. The protagonist clones' development of human emotions and expressions in the context of each films are similar if not exact. The above are but a few of the examples that illustrate the sameness of feel and timing in both the original 'Clonus' and the succeeding 'The Island.'"  (Hunter Dec., Ex. B,C).

While no dates are evident in either film, both films appear to take place over a period of a few weeks in the very near future. The first half of each film takes place in the colony where the clones are raised, and from which the lead clone ultimately escapes, and much of what transpires in the colony in both films is almost identical, including the romantic awakening of the male and female leads. The other half of each film is set in the "real world" where the sinister people behind the facility attempt to hunt down their escaped "products" and to prevent the truth from getting out. At the end of each film the protagonist, after experiencing the real world, returns to the colony to save others like him. *Id.*

### d.    Settings

The settings are essentially the same in CLONUS and THE ISLAND and have the same plot functions notwithstanding the massive budget disparity which permits THE ISLAND settings to be far more elaborate, high tech and expansive. (Hunter Dec., Ex. B). Both are set in isolated, colonies in an arid desert setting not far from Los Angeles. The colonies in both movies have external attributes of health spas, while the mythic utopias of "The Island" and "America" are portrayed only in photographs as scenic paradises.

The facilities that house the clones ("Walker Industries" in CLONUS / "The Merrick Institute" in THE ISLAND) each use the latest in technology of their respective production eras (1978 vs. 2005) to monitor and operate on the clones. The clones in each film are dressed in branded athletic wear ("Addidas" in CLONUS / "Puma" in THE ISLAND) and the guards who patrol them are dressed in dark jogging suits with white stripes on the sleeves. In addition, the

clones are dressed in all white in THE ISLAND and in AMERICA.  The clones are grown/stored naked in plastic in a large facility room in both movies.  Long, florescent lit, white halls with a single broad colored horizontal stripe, elevators, the dark mechanized, chaotic "backstage" of the pristine facilities and long tunnels are used for large parts of the suspense scenes and chases in both movies.  (Hunter Dec., Ex. B, C).

In both films, the hero escapes the colony through a corrugated underground tunnel, emerges on an arid desert plain with mountain ranges in the distance and after crossing a rickety barb wired fence with an old "WARNING" sign, sees the world in a sweeping panoramic view from a rocky cliff.  When he first arrives in Los Angeles it is a downtown setting teaming with people and traffic and then visits the elegant home (within budget) of his human counterpart.

### e.    Themes

"In its ordinary meaning, a theme is understood to be the underlying thought which impresses the reader of a literary production, or the text of a discourse." *Roe-Lawton v. Hal Roach Studios*, 18 F.2d 126, 127 (C.D. Cal 1927).  "[T]he essence of infringement lies in taking not a general theme, but its particular expression through similarities of treatment, details, scenes, events and characterization." *Reyher*, 533 F.2d at 91.  The following themes identified by both Defendants and Plaintiffs are common to both movies and expressed in the respective works in near identical fashion.  *See* Fiveson Dec., ¶ 20.

- "It deals with the fact that we all want to live longer, we all want to find the Holy Grail of life, what can make us live longer, as you see nowadays with all this human growth hormones and whatnot," *Michael Bay, Director, The Island,* as quoted in *The Island Movie Preview,* located on-line at *ACTIONADVENTURE.ABOUT.COM.*  (Toberoff Dec., Ex. B).

- "[T]his is about science gone awry, but it is also about seeing the world through these innocent eyes." *Laurie MacDonald, Executive Producer, The Island,* as quoted in *Island Formation,* located on-line at *CELEBRITY WONDER.COM.*  (Toberoff Dec., Ex. E).

- "I think virtually it's about what it means to be a human, and what makes us make the decision that we make in life, why we gravitate towards love." *Alex Kurtzman, Screenwriter, The Island,* as quoted in *Interviews,* at *DARK HORIZONS.COM.*  (Toberoff Dec., Ex. B).

- In both films human clones are natural sources for rejection-free organs for transplantation thereby greatly extending the life of their sponsors.

- The mortality of Man and the humanity of a clone as an expression of a Man are reflected throughout both films.

- The moral question posed by a human's creation of human life is posed by both films.

- The issues of whether a human clone is a person or a "thing" and what it means to be "human" is posed throughout both films where innocent, child-like clones are depicted as more human than the humans.

- The indomitable human spirit forged by survival, individuality and the desire to be free is expressed in both films by the escape of the lead clones and their willingness to risk their lives to discover the truth of their existence.

- The irrepressible nature of human sexuality is expressed in both films by the sexual awakening and burgeoning love of the lead clones.

- The chief doctors in both films who create and destroy human clones are "playing God."

- The theme that our egocentricity and narcissistic quest for health, beauty and immortality compromises our humanity runs throughout both films.  There is no distinction between race or gender in either film as our humanity as a whole is at stake.

- In both films consumerism is satirized by the photographic depictions of paradise ("The Island"/"America") accompanied by a soothing female voice as in a cosmetic or travel ad.

- The theme that religion and its promise (if one follows the rules) of a paradise-like afterlife is the opium of the masses is expressed in both films by the indoctrinated myth of "The Island"/ "America" used to control the clones.

- The theme that absolute power corrupts is expressed in both films by the sinister institutes which control the clones and believe they are above the law in serving "a higher purpose."

- Both films vilify the omnipotence and indifference of the medical profession by their characterization of doctors and operating rooms that serve as torture chambers.

- The theme that Science in the wrong hands creates demigods on Earth is in both films.

- The theme that Science is blurring the lines between reality and fantasy between science fiction and science fact is expressed by the prescient dreams of the lead clone, by the false realities of the cloning colonies and by the indistinguishable humans and human clones.

- The universal truth that empathy is a human trait of noble form and function is expressed in both films by the attachments of the clones to each other, by the sympathetic human

character that helps the hero and by the return of the hero to the facility to save others.

C.     **Defendants' Rationalizations Are Unpersuasive.**

No more clearer argument for copyright infringement can be made than by a simple viewing of THE ISLAND and CLONUS.  The movies themselves are the best evidence of unlawful copying and are so strikingly similar in their choices, structure and sequencing of similar elements as to leave no room for coincidence.  *See Walker,* 784 F.2d at 49 (2d Cir. 1986) (requires "examination of the works themselves").  Faced with this blatant, if not appalling reality, Defendants' predictable tact is to (1) deny; (2) focus on dissimilarities and (3) selectively disassemble, dissect and reduce CLONUS' similarities into isolated bits to be mislabeled as "ideas," conventions or scenes a faire.

Defendants' methodology is incorrect as a matter of law.  Firstly, in a copyright infringement action "[t]he key to the ordinary observer test is []the similarities rather than the differences."  *Novelty Textile Mills,* 558 F.2d at 1093 n.4; *Hogan,* 48 F. Supp. 2d at 309 ("[e]ven when two works are dissimilar in many respects, substantial similarity between them may still be found"); *Gund, Inc. v. Applause, Inc.,* 809 F.Supp. 304, 308 (S.D.N.Y. 1993); *Gund v. Russ Berrie & Co.,* 701 F.Supp. 1013, 1021 (S.D.N.Y. 1988) ("dissection of dissimilarities is inappropriate").

Secondly, "[i]n applying this [discerning ordinary observer] test, a court is not to dissect the works at issue into separate components and compare only the copyrightable elements…To do so would result in almost nothing being copyrightable…" *Boisson,* 273 F.3d at 272.  "Moreover, even a compilation of unprotectable elements may enjoy copyright protection when those elements are arranged in an original manner." *Knitwaves,* 71 F.3d at 1003; *see also Feist,* 499 U.S. at 361; *Sofitel, Inc. v. Dragon Med. and Scient. Commns, Inc.,* 118 F.3d 955, 964 (1997); *Hogan,* 48 F. Supp. 2d at 309.  In sum, Defendants' approach is contrary to this circuit's focus on the "total concept and feel" of contested works.  *See Boisson,* 273 F.3d at 272; *Hogan,* 48 F. Supp.2d at 309.

In the words of Plaintiff's expert, Professor Hunter:

"I do not believe the 'scenes a faire' concept is relevant in the similarity comparisons of the original 'Clonus' to the subsequent 'The Island.'  Creative expression began with the unique premise that goes far beyond the idea of cloning.

24

The initial creative expression was the premise/concept…'a clone who learns his reality is a lie and sets out to discover the evil truth about not only his existence, but the existence of others like him.  In his quest, he learns more about humans than he expected.'  A metaphor for human life.  Aristotle says 'superior drama or comedy that allows the audience to discover themselves.'  And in my opinion, the above is a superior and original premise/concept.  From that creative, superior and original concept came choices that must be made that involve vast amounts of further creative expression, not a pre-ordained 'one action logically follows the other' 'scenes a faire' paradigm.  Those choices in the original 'Clonus' became, and are, individual specific creative expressions."  (Hunter Dec., Ex. B).

More bluntly, with virtually unlimited resources (e.g., $126 million budget) and an interest in cloning how is it, given the multiple directions Defendants could have taken their film and all the different choices Defendants could have made with each such direction, that they arrived at a film so strikingly close to CLONUS as to raise the ire of anyone viewing both films?  Even Defendants' skilled counsel cannot explain this away.  The films alone prove that no reasonable jury, properly instructed, could find that THE ISLAND did not unlawfully copy CLONUS.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests that the Court grant their motion for summary judgment in the form lodged separately herewith as the Proposed Judgment.


DATED: May 17, 2006          LAW OFFICES OF MARC TOBEROFF, PLC


                                    s/Marc Toberoff
                        By_____
                                Marc Toberoff (MT 4862)

                        LAW OFFICES OF MARC TOBEROFF, PLC
                        1999 Avenue of the Stars, Suite 1540
                        Los Angeles, CA 90067
                        (310)-246-3333

                        Attorneys for Plaintiffs Clonus Associates and
                        Robert Fiveson d.b.a. Fiveson Productions